**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **PPI TECHNOLOGY SERVICES, L.P.** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 2:11-CV-00047** |
| | § | |
| | § | |
| **LIBERTY MUTUAL INSURANCE** | § | |
| **COMPANY,** | § | |
| **Defendant** | § | |

**MOTION FOR SUMMARY JUDGMENT OF**
**DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Liberty Mutual Insurance Company ("Liberty") files this Motion for Summary Judgment and would respectfully show the court as follows:

**I.**
**GROUNDS FOR SUMMARY JUDGMENT**

This is a suit for insurance coverage under a standard general liability policy issued by Liberty to plaintiff PPI Technology Services, LP ("PPI"). PPI seeks a declaration that Liberty has a duty to defend PPI in two underlying suits filed against PPI by its partners in an oil and gas exploration venture that resulted in a dry hole. The plaintiffs in the underlying suits allege PPI agreed to drill an oil well on one of three leases in Lake Boudreaux, Louisiana owned by the underlying plaintiffs and that PPI negligently and in breach of its agreements drilled the well on the wrong lease, also owned by the underlying plaintiffs. They allege they incurred damage in the amount of money expended to drill the wells plus delay rentals necessary to maintain the leases in effect.

As a matter of law, those allegations preclude coverage under the Liberty Policy issued to PPI. The suits do not allege "bodily injury" or "property damage" caused by an "occurrence" as required by Coverage A of the PPI Policy.  Nor do the suits allege "property damage" within the "underground resources and equipment hazard."  The suits also do not allege "personal and advertising injury" under Coverage B of the PPI Policy.  In addition, certain policy exclusions known as the "business risk" exclusions preclude coverage because they are specifically intended to preclude coverage for the type of failure to perform alleged against PPI.  Finally, the contract liability exclusion also precludes coverage because the underlying suits allege PPI failed to perform its contractual obligations.  As a matter of law, therefore, Liberty is entitled to summary judgment on all claims for coverage in this action.

**II.**
**SUMMARY JUDGMENT STANDARDS**

Federal Rule of Civil Procedure 56 requires summary judgment if the evidence shows there is "no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  A defendant moving for summary judgment must only present evidence disproving "the existence of any essential element of the opposing party's claim."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  Disputes over irrelevant, immaterial or unnecessary facts will not render summary judgment inappropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Summary judgment under Rule 56 is also appropriate against a party who fails to produce evidence on an essential element of a claim on which that party has the burden of proof.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Pennington v. Vistron Corp.,* 876 F.2d 414, 425 (5th Cir. 1989).  In the context of summary judgment, the insured must produce evidence that raises a question of material fact as to the existence of a covered claim.  *Royal Surplus Lines Insurance Co. v. Brownsville Independent School District,* 404 F.Supp.2d 942, 949 (S.D. Tex. 2005).

## III.
## SUMMARY JUDGMENT EVIDENCE

This Motion relies on the pleadings on file in this action and the following summary judgment proof filed contemporaneously with this Motion, which is incorporated by reference herein:

Exhibit A:      Certified copy of Policy No. TBl-691-550640-016.

    A-1:      Excerpt from Policy No. TBl-691-550640-016:  CGL Form.

    A-2:      Excerpt from Policy No. TBl-691-550640-016:  "Underground Resources and Equipment Coverage" ("UREC") endorsement, No.  CG 22 62 10 01.

## IV.
## STANDARDS FOR ASSESSING THE DUTY TO DEFEND

To determine whether an insurer has a duty to defend its insured, Texas courts follow the "eight corners" rule, looking only to the pleading and the insurance policy to determine whether the duty to defend exists.  *National Union Fire Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).  The duty to defend arises only if the factual allegations of the pleading against the insured, reasonably construed, are potentially covered by the policy.  *Id.*; *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex.1997).  Thus, legal theories and mere labels do not determine whether or not there is a duty to defend.  *Griffin*, 955 S.W.2d at 82; *Merchants Fast Motor Lines*, 939 S.W.2d at 141.  Further, if the underlying pleading does not invoke the duty to defend, there can be no duty to indemnify if the allegations preclude coverage under any circumstances.  *Griffin*, 955 S.W.2d at 82.

The insured bears the burden of showing that the claim against it is potentially within the policy's coverage.  *Sentry Ins. v. R.J. Weber*, 2 F.3d 554, 556 (5th Cir.1993).  Texas courts construe policy language "according to general rules of contract construction to ascertain the parties intent."  *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118,

126 (Tex. 2010).  Texas courts "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless."  *Id.*

## V.
## UNDISPUTED FACTS

Based on the standards for assessing the defense duty under Texas law, the material facts in this coverage action are essentially limited to the allegations in the underlying suits and the provisions of the PPI Policy.

The first suit against PPI was filed by the operator of the venture, styled *Royal Production Company, Inc. v. PPI Technology Services, L.P.,* Cause No. 09-4086-H, in the 347th Judicial District Court of Nueces County, Texas (the "Royal Suit").  The First Amended Petition to Invoke and Compel Arbitration in the Royal Suit (the "Royal Petition") is attached as Exhibit "B" to PPI's Original Petition against Liberty in the present suit.  The Royal Petition alleges that on June 30, 2005, Royal and PPI entered into a Master Service Agreement ("MSA") pursuant to which PPI agreed to perform work for Royal in connection with Royal's oil and gas exploration business.  Royal Petition at 2.  Royal engaged PPI to serve as representative of the working interest owners in drilling an oil and gas well on which Royal was the designated "Operator" on behalf of the working interest owners.  *Id.*  The well site was allegedly located in Lake Boudreaux, Terrebonne Parish, Louisiana.  *Id.*  The Royal Petition further alleges that PPI, through its employees and agents and/or subcontractors, "caused the drilling rig to be towed to and placed upon the wrong location, notwithstanding the fact that PPI had the correct location and the specific coordinates of the correct location" of the well.  Royal Petition at 2-3.  As a result, the Petition alleges, the well was drilled in the wrong location in violation of the MSA and of the drilling permit issued by the State of Louisiana. *Id.*

The Petition alleges PPI's conduct caused Royal and the non-operating working interest owners to spend in excess of $4,200,000 for the drilling of the well in the wrong location, which resulted in a "dry hole."  Royal Petition at 3.  Obviously attempting to plead into coverage under PPI's policy, the Royal Petition further alleges the damages incurred by Royal "include property damage to Royal as an owner in the property where the well was being drilled."  *Id.*  The Royal Petition then alleges a "property damage" definition that tracks the definition of property damage in the Policy.  Royal Petition at 4.

The Royal Petition further alleges that the parties entered into a "Rule 11 agreement," which is attached as Exhibit "A" to the PPI Petition, to resolve the dispute through arbitration with all parties and claims.  Royal Petition at 4, Exhibit "A."  PPI's initial disclosures in this case indicate the arbitration proceeding is styled "In the [sic] Re: Lake Boudreaux LS 18897#1 Well Arbitration Proceeding," in Harris County, Texas.  PPI's Rule 26(a)(1) Disclosures at 2.

The second suit against PPI was filed by the working interest owners and is styled *Blue Moon Exploration Company, LLC, et al. v.  PPI Technology Services, L.P.,* Cause No. 158193, In the 32nd Judicial District Court, Parish of Terrebonne, Louisiana (the "Blue Moon Suit").  The original Petition in the Blue Moon Suit (the "Blue Moon Petition") is attached as Exhibit "C" to the PPI Petition herein.  The Blue Moon Petition, as noted, was filed by eight companies who are the non-operating interests in the three mineral leases in Lake Boudreaux that Royal and the Blue Moon plaintiffs have entered into with the State of Louisiana.  Blue Moon Petition at ¶¶ 6, 8.  The Blue Moon Petition seeks damages "caused by PPI's negligence and/or gross negligence in locating and drilling an oil and gas well in an incorrect location **in** Lake Boudreaux, Terrebonne Parish."  *Id*. ¶3 (emphasis added).  The Blue Moon Petition alleges the plaintiffs entered into an operating agreement with Royal relating to oil and gas exploration operations on the three leases,

with Royal designated as the operator for the Contract Area charged with the responsibility of drilling the agreed-to Wells. *Id*. ¶ 5, 7.  As "Non-Operators" plaintiffs were required to reimburse Royal for the costs of drilling an initial well according to their respective interests.  *Id.* at ¶ 8, 16.  The parties agreed to drill an initial well on Lease No. 18892 but pursuant to a later agreement the parties changed the location of the initial well to Lease No. 18891.  *Id.* at ¶¶ 10-12.  Royal subsequently contracted with PPI to conduct the drilling activities for the initial well under an agreement to which the Blue Moon Plaintiffs are not parties.  *Id.* at ¶¶ 14-16.  PPI drilled the well from June 9, 2006 through July 14, 2006 but those operations resulted in a dry hole which was then plugged and abandoned on or about July 12, 2006.  *Id.* at ¶¶ 17-18.

The Blue Moon Petition alleges that on October 29, 2008, plaintiffs received notice that the initial well was incorrectly drilled on Lease No. 18892 when it was supposed to have been drilled on lease No. 18891.  Blue Moon Petition at ¶ 19.  Again, the Petition specifically alleges both leases are held by Royal and the Blue Moon Plaintiffs.  *Id.* at ¶ 6.  The Petition alleges PPI breached legal duties and was negligent and/or grossly negligent in drilling the well in the wrong location.  *Id.* at ¶ 20.

The Blue Moon Petition specifically alleges PPI's wrongful conduct "caused the Plaintiffs damages in the amount Plaintiffs paid to have said well drilled in addition to any and all other associated costs."  Blue Moon Petition at ¶ 20.  The Petition further alleges PPI's conduct "damaged Blue Moon by necessitating the payment of two delay rentals totaling $737,752.40 in order to maintain" the three leases in force and effect.  *Id.* at ¶ 21.  The Blue Moon Plaintiffs seek a declaration that PPI was negligent, grossly negligent, and breached legal duties to the plaintiffs in drilling the well in the wrong location and seeks damages as stated above.  *Id.*

Liberty issued to PPI a commercial general liability policy, number TBl-691-550640-016, with a policy period of April 1, 2006 to April 1, 2007 (the "PPI Policy").  A true and correct copy of the PPI Policy is attached hereto as Exhibit "A."  The PPI Policy is a standard Texas CGL policy issued in Texas to a Texas limited partnership.  Because the Policy is a large commercial policy, covering many areas of PPI's business, Liberty has attached as Exhibit "A-1" the CGL policy form for the Court's convenience.  Liberty Mutual has denied that it owes PPI any duty to defend or indemnify it in the Royal and Blue Moon Suits under the PPI Policy.

## VI.
## ARGUMENT AND AUTHORITIES

As discussed above, whether Liberty has a duty to defend PPI in the underlying suits is governed by the "eight corners" rule, under which the duty to defend arises only if the <u>factual allegations</u> of the pleading against the insured, reasonably construed, are potentially covered by the policy.  *National Union Fire Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex.1997).   The legal theories asserted by the underlying plaintiffs do not determine whether or not there is a duty to defend.  *Griffin*, 955 S.W.2d at 82; *Merchants Fast Motor Lines*, 939 S.W.2d at 141.

A.    **Liberty Has No Duty to Defend PPI in the Underlying Suits Under Coverage A for Bodily Injury and Property Damage Liability.**

The PPI Policy's insuring clause for Coverage A "Bodily Injury and Property Damage Liability" provides Liberty "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and that Liberty has "the right and duty to defend any 'suit' seeking those damages."  Exhibit A-1 at 1.  The Policy further provides that the insurance applies only if the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory," and

only if the "bodily injury" or "property damage" occurs during the policy period. *Id.* Thus, in order to impose a duty to defend under the Policy, the petition must allege facts potentially within the meaning of "bodily injury" or "property damage," <u>and</u> that any such loss was caused by an "occurrence."

> 1. **The underlying suits do not allege "property damage" as defined in the Policy.**

The underlying suits obviously do not allege any "bodily injury."

Moreover, the suits do not allege "property damage" as defined in the PPI Policy.  The Policy defines "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

Exhibit A-1 at 13.

Both underlying suits here allege only pure economic loss that does not satisfy the property damage definition.  Texas law has consistently held, on very similar facts, that pure economic damage resulting from improper drilling of an oil well, does not amount to "property damage" under the standard policy language at issue in this case.  In *Lay v. Aetna Ins. Co.*, 599 S.W.2d 684 (Tex. Civ. App.--Austin 1980, writ ref'd n.r.e.), the court held that an insured's failure to properly locate an oil well on the plaintiff's leasehold was pure "economic damage" that did not constitute "property damage" under a CGL policy.  The insured, J. D. Lay, was employed by plaintiff J&J Oil Venture to ascertain the proper location for, and supervise the drilling of, an oil well on a lease belonging to J&J.  *Id.* at 685.  Lay located a site and a well was drilled and production commenced.  After J&J had expended $40,000 on the well, it discovered that, due to Lay's error in reading the surveyor's stakes, the well had been located and drilled on

an adjoining tract not under lease to J&J.  *Id.*  J&J settled with the adjoining landowner by purchasing an assignment of the drilling rights on the property where the well was located.  *Id.*  J&J then sued Lay to recoup those expenses and recovered over $34,000 from Lay. The damages awarded against Lay included amounts for purchase of an assignment of the lease on which the well was drilled, for attorney and surveyor fees, and for loss of 1500 barrels of oil to adjacent wells caused by delay in getting the well into production.  *Id.* at 685-86.

Lay then sued Aetna for coverage but the Austin Court held coverage was precluded as a matter of law.  The Aetna policy, like the Liberty policy here, defined "property damage" as "physical injury to or destruction of tangible property" or "loss of use of tangible property which has not been physically injured or destroyed."  *Id.*  at 686.  The court held the judgment against Lay did not involve "property damage" because the term "tangible property" is property that is "capable of being handled or touched" or "weighed, measured, and estimated by the physical senses."  *Id.*  The Court held, as a matter of law, that the purchase of the assignment and the payment of attorney and surveyor fees were not injury to, destruction of, or loss of use of "tangible property."  *Id.*  The purchase of the assignment, the court noted, "was an economic transaction involving the exchange of money for the privilege of drilling and producing oil" and "the attorney and surveyor fees were merely expenses necessarily incurred in the process of negotiating and acquiring the lease from [the adjoining landowner]."  *Id.*  The court held there was also no injury to, destruction of, or loss of use of "tangible property" in J&J's loss of oil to adjacent wells.  *Id.*

Like *Lay*, the present case involves allegations of pure economic loss.  The only specific damages alleged by Royal and the Blue Moon plaintiffs are lost expenses for the drilling of the well in the wrong location (in excess of $4.2 million) and the "delay rentals" ($737,752.40) that

the Blue Moon plaintiffs had to pay in order to maintain the leases in force.  Royal Petition at 3; Blue Moon Petition at ¶ 20.  These are purely economic damages that cannot conceivably be construed as injury to "tangible property."  Lost funds are simply not "tangible property" within the "property damage" definition in the PPI Policy.

There is no factual allegation in either the Blue Moon Petition or the Royal Petition identifying any physical injury to or loss of use of any "tangible property."  Neither suit alleges that PPI's mistake damaged "tangible property" owned by Royal or the Blue Moon plaintiffs or caused the loss of use of any tangible property.  There is not even an allegation of a loss of use of the oil and gas leases, which were maintained due to Blue Moon's payment of delay rentals. There is no claim by the landowner on whose land the well was drilled that PPI damaged that land or leasehold here.  As in *Lay*, the Petitions in the Royal and Blue Moon Suits clearly allege that PPI's mistake simply cost Royal and the Blue Moon plaintiffs money in the form of drilling and "associated costs" and "delay rentals."  Blue Moon Petition at ¶¶ 20-21.  This is pure economic damage caused by PPI's breach of its contracts, not damage to or loss of tangible property.  Texas law definitively precludes coverage for such purely economic losses where the policy defines "property damage" in terms of "tangible property."  *See, e.g., State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 737 (Tex. App.--Fort Worth 1996, no writ) (allegations that seller of property misrepresented condition of property, drainage and foundation problems did not allege "property damage" because the injured party did not assert that the insured injured the property, destroyed the property, or caused the resulting loss of use); *Jennings v. State Farm Lloyds,* 2006 WL 66408, slip op. at *6-7 (Tex.  App.--Austin Jan. 12, 2006, no pet.) (claims by home purchasers against insured sellers that sellers breached their contract and misrepresented the condition of the property did not allege property damage, and thus insurer did not owe duty to

defend insureds under homeowners policy or umbrella policy); *Allstate Texas Lloyd's v. Meyers,* 2005 WL 331120 (N.D. Tex. Feb 11, 2005) (same); *Nautilus Insurance Co. v.  John Gannon Inc.,* 103 Fed. Appx. 534 (5th Cir.  2004) (even if leasehold interest in real property was tangible property, damages for breach of contract, misrepresentation, or fraud that billboard company alleged against insured, in connection with agreement to jointly build and sell sign, were purely economic damages not "property damage" in CGL policy); *Gibson & Assocs., Inc. v. Home Ins. Co.,* 966 F. Supp. 468, 474 (N.D. Tex.1997) (damages sought by city for contractor's breach of contract by failing to ensure access to businesses during construction on street were for economic loss, not "property damage"); *Adams v. Great American Lloyds Ins. Co.*, 891 S.W.2d 769, 772 (Tex. App.--Austin 1995, no writ) (noting that CGL policies do not specifically exclude recovery for "economic loss" but require that the "property damage" be to "tangible property"); *Terra Int'l Inc. v. Commonwealth Lloyds Ins. Co.*, 829 S.W.2d 270, 273 (Tex. App.--Dallas 1992, writ denied) (petition alleging that county flood control district substantially increased the plaintiff's ad valorem taxes rendering plaintiff's land virtually worthless and unsalable did not allege "loss of use of tangible property" within the property damage provision); *Houston Petroleum v. Highlands Ins.,* 830 S.W.2d 153, 156 (Tex. App.--Houston [1st Dist.] 1990, writ denied) ("the loss of use of  'tangible property,' does not include economic loss, such as loss of initial investments, subscription funds, and profits").

A case that distinguished *Lay* on this point illustrates the facts that must be alleged to satisfy the "property damage" definition.  In *Mid-Continent Cas. Co. v. Camaley Energy Co., Inc.*, 364 F. Supp. 2d 600, 602 (N.D. Tex. 2005), the insured, who was hired to drill a well, failed to "evaluate the location of the well bore being drilled and as a result crossed over the lease line and [the well] was in fact not on the property represented by the leasehold."   *Id*.  The petition

also alleged this resulted in the "deviation and trespass into the neighboring leasehold which resulted in the constructive eviction of Plaintiff Kendall from its leasehold and use of enjoyment of the same." *Id*. In the coverage action, the Court noted the policy defined "property damage" in the same way as the present policy, including "physical injury to tangible property," or "loss of use of tangible property that has not been physically injured." The court agreed that the suit did not allege "property damage" under the first prong, but held that the petition did satisfy the second prong, loss of use of tangible property, because of the specific factual allegation that the plaintiff was constructively evicted from its mineral leasehold. *Id*. at 605-606.

Unlike *Camaley*, neither Royal nor the Blue Moon Plaintiffs allege that PPI's mistake caused loss of or damage to or "constructive eviction" from any of the three leases involved in this case. Royal fails to allege any facts showing a loss of use of its leasehold that could have conceivably been caused by the drilling of the dry hole in the lake on one of three leases owned by Royal and the Blue Moon Plaintiffs. The Blue Moon Petition in particular makes clear that the damages caused by PPI's improper location of the well were limited to the expenses of drilling the well and delay rentals to keep the leases in effect. Blue Moon Petition at ¶¶ 20-21.

Finally, Royal's obvious attempt to plead into coverage here fails because there are no **facts** alleged that trigger "property damage" coverage. Royal Petition at 3, 4. Royal's boilerplate allegations tracking the Policy's property damage definition will not create coverage because the specific **facts** alleging pure economic loss preclude coverage. As noted above, a duty to defend arises only if the **factual allegations** of the pleading against the insured, reasonably construed, are potentially covered by the policy. *National Union Fire Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex.1997). Thus, legal theories and

mere labels do not determine whether or not there is a duty to defend. *Griffin*, 955 S.W.2d at 82; *Merchants Fast Motor Lines*, 939 S.W.2d at 141. "[A] cause of action's label does not determine whether an insurer has a duty to defend." *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 135 (Tex. 2010).

The facts alleged by Royal and the Blue Moon Plaintiffs show that their damages were limited to expenses incurred in drilling the wells not loss of use of or physical injury to any tangible property. The facts alleged in both Petitions indicate, as a matter of law, that the damages incurred by Royal and the Blue Moon plaintiffs are limited to economic losses.  Thus, coverage is precluded under Coverage A.

### 2.    In the Alternative, the Business Risk Exclusions Preclude Coverage as a Matter of Law.

The Policy also contains exclusions that preclude coverage for the allegations in the underlying suits, even if this Court finds they allege "property damage" caused by an "occurrence."

The so-called "business risk" or "your work" exclusions preclude coverage for the cost to correct "inferior workmanship by the policyholder," that is the cost to repair or replace the insured's own work or product.  *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 13-14 (Tex. 2007); *Jim Johnson Homes, Inc. v. Mid-Continent Casualty Co.*, 244 F.Supp.2d 706, 717 (N.D. Tex. 2003) (where the only property damaged was the property on which insured building contractor was working, "your work" exclusions j(5) and j(6) precluded coverage); *T. C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co.*, 784 S.W.2d 692, 694-95 (Tex. App.-- Houston [14th Dist.] 1989, writ denied) ("your work" exclusion precluded coverage for repair and replacement costs of general contractor that had improperly installed marble on building). The justification for treating these risks differently is that "the insured can control the quality of

the goods and services he supplies, while accidental injury to property or persons exposes him to almost limitless liability." *T. C. Bateson Constr. Co.,* 784 S.W.2d at 694-95.

The Royal and Blue Moon Petitions both allege facts showing that, even if PPI's conduct caused "property damage," such damage was limited to PPI's own work, damage that is specifically precluded by the "business risk" exclusions.

> **a.    Exclusion 2.j(5) for damage to ongoing operations of the insured precludes coverage as a matter of law.**

Exclusion 2.j(5) provides that the insurance does not apply to property damage to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations."  Exhibit A-1 at 5.  Texas decisions generally hold that exclusion 2.j(5) applies to damage caused during actual work on the relevant project.  *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.,* 242 S.W.3d 1, 11 (Tex.2007) ("This exclusion applies while operations are being performed."); *Lennar Corp. v. Great Am. Ins. Co.,* 200 S.W.3d 651, 686-87 (Tex. App.--Houston [14th Dist.] 2006, pet. denied); *CU Lloyd's of Tex. v. Main Street Homes,* 79 S.W.3d 687, 696 (Tex.App.2002) (stating that exclusion j(5) "applies while operations are being performed" and thus the exclusion did not apply to damage that occurred after construction had been completed); *Jim Johnson Homes, Inc. v. Mid-Continent Casualty Co.,* 244 F.Supp.2d 706, 710-11, 717 (N.D. Tex. 2003) (finding that exclusion would apply to property damage incurred during active physical construction of house); *Houston Bldg. Serv., Inc. v. Am. Gen. Fire & Cas. Co.,* 799 S.W.2d 308, 311 (Tex.App.-Houston [1st Dist.] 1990, writ denied) (finding exclusion 2.j(5) precluded coverage for damage occurring while insured janitorial company was cleaning building because operations had not been completed).

In the *Camaley* case, discussed above, in which the insured accidentally lost control of an oil well bore and deviated into another lease, the court held that because the alleged property damage, *i.e.,* the deviation, occurred while the insureds were drilling on the plaintiff's lease, the damages fell squarely within Exclusion 2.j(5).  364 F. Supp. 2d at 607.  The court noted that if the insureds were being sued by the owners of the neighboring property for property damage, Exclusion 2.j(5) would be inapplicable because the insureds were not performing work on the neighboring property at the time of the damage.  *Id.*  However, because the insureds were being sued by the plaintiff leaseholders for property damage inflicted on their own lease, not the neighboring property (that is, the suit was "brought by the very people who hired the insureds, for damage to the property they were hired to work on"), damage to neighboring property was irrelevant and Exclusion 2.j(5) precluded coverage. *Id.*

Similarly, in this case, the only allegation that could conceivably qualify as "property damage" under the Policy is the allegation in the Royal Petition that Royal suffered property damage "as an owner in the property where the well was being drilled."  Royal Petition at 3.  This allegation unambiguously states that the property damage, if any, occurred to the very property on which PPI was working, namely, the lease on which the well was drilled, not to other property owned by any third party.  Both Petitions clearly allege that the well drilled by PPI was drilled on one of the leases owned by Royal and the Blue Moon Plaintiffs.  *Id.*; Blue Moon Petition at ¶¶ 6, 19.

Moreover, the facts alleged in both petitions show that the damage, if any, occurred during the insured's ongoing operations: the phrase "where the well was being drilled " is stated in the present tense and the facts indicate that the damage occurred when PPI mis-located the well and began drilling.  Royal Petition at 3.  The definition of "property damage" in the Policy

provides that any "loss of use" to property that is physically injured "occur[s] at the time of the physical injury that caused it" and that any "loss of use" to property not physically injured "occur[s] at the time of the 'occurrence' that caused it." Exhibit A-1 at 13. The "occurrence" or "accident" in this case occurred when PPI began drilling in the wrong place and thus any property damage occurred during PPI's operations. Even if this Court finds "property damage" occurred, Exclusion 2.j(5) therefore precludes coverage as a matter of law.

> **b.      In the alternative, Exclusion 2.l for damage to "your work" precludes coverage as a matter of law.**

Exclusion 2.1 is the completed operations version of Exclusion 2.j(5). It precludes coverage in this case even if this Court finds any "property damage" occurred after PPI completed its work. Exclusion 2.l precludes coverage for property damage "to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.' This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Exhibit A-1 at 5. The Policy defines "your work" as follows:

a.      ["Your work"] means:

(1)      Work or operations performed by you or on your behalf; and
(2)      Materials, parts or equipment furnished in connection with such work or operations.

b.      Includes:

(1)      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
(2)      The providing of or failure to provide warnings or instructions.

Exhibit A-1 at 15.

Because it applies to the "products-completed operations hazard," Exclusion 2.1excludes coverage for "property damage" to the insured's completed work with one notable exception –

work performed for the insured by a subcontractor.   *Lamar Homes*, 242 S.W.3d at 11.  Thus, even if this Court finds "property damage" is alleged by Royal and Blue Moon, and that the damage did not occur during ongoing operations (precluding application of Exclusion 2.j(5)), Exclusion 2.l precludes coverage as a matter of law because the damage occurred to PPI's own work under the "your work" definition.

As discussed above, Royal alleges that it suffered property damage "as an owner in the property where the well was being drilled."  Royal Petition at 3.    Royal and the Blue Moon Plaintiffs also specifically allege that the drilling of the well was PPI's responsibility.  *Id.*; Blue Moon Petition at ¶ 14-16.  Thus, the mis-located well satisfies the definition of "your work" in the Policy, meaning any property damage occurred to the insured's own work, within the meaning of Exclusion 2.l.  Moreover, the underlying suits allege no other type of damage to any other property and they do not allege that the well was drilled by any subcontractor of PPI. Accordingly, Exclusion 2.l precludes coverage as a matter of law if this Court finds property damage occurred and that Exclusion 2.j(5) does not apply.

       **c.**    **In the alternative, Exclusion 2.m precludes coverage as a matter of law.**

Exclusion 2.m, entitled "Damage to Impaired Property or Property Not Physically Injured," precludes coverage for property damage "to 'impaired property' or property that has not been physically injured, arising out of . . . a defect, deficiency, inadequacy or dangerous condition in . . . "your work"; or . . . a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms."  Exhibit A-1 at 5. However, this exclusion "does not apply to the loss of use of other property arising out of sudden and accidental physical injury to . . . 'your work' after it has been put to its intended use."  *Id.*  The Policy defines the term "impaired property" as follows:

[T]angible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.    You have failed to fulfill the terms of the contract or agreement;

If such property can be restored to use by:

    a.    The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b.    Your fulfilling the terms of the contract or agreement.

Exhibit A-1 at 12-13.

Exclusion 2.m has been held to apply only to loss of use claims, not to tangible property that has been physically injured.  *Lennar Corp. v. Great American Insurance Co.,* 200 S.W.3d 651, 687 (Tex. App.--Houston [14th Dist.] 2006, pet.  denied); *Admiral Insurance Co. v.  Little Big Inch Pipeline Co. Inc.,* 523 F.Supp.2d 524 (W.D. Tex. 2007) (exclusion 2.m precluded coverage for diminution in value claims arising out of an insured subcontractor's defective work in turning off natural gas service to a mobile home park because no property had been physically injured).

In *Camaley*, Mid-Continent argued that exclusion 2.m applied because the insureds' negligence caused the plaintiffs to lose their leasehold and that amounted to a breach of contract. 364 F. Supp. 2d at 608. The insureds argued that the exclusion did not apply because the damages claimed in the petition did not fall within the definition of "impaired property."  The court held, however, that the exclusion "applies to *both* 'impaired property' or 'property that has not been physically injured,' such as the leasehold at issue here." *Id.* (emphasis in original). Because the damage alleged in that case was caused by the insured's negligent drilling, the court held the conduct fell within exclusion 2.m "because such conduct constitutes a defect, deficiency, inadequacy, dangerous condition in their work."  *Id.* In the alternative, the court held

that "the bore deviation constitutes [the insured's] failure to perform their work for the *Kendall*

plaintiffs in accordance with their contract," making exclusion 2.m applicable.  *Id.*

Similarly, in the Royal and Blue Moon Suits, even if this Court finds property damage

occurred to the leasehold owned by Royal and the Blue Moon Plaintiffs, such damage occurred

to "property that has not been physically injured," precluding coverage under Exclusion 2.m.

There is no **factual** allegation in either suit that any of the three leases owned by Royal and Blue

Moon was "physically injured."   In the alternative, the Royal and Blue Moon Petitions both

specifically allege that the mis-location of the well was a failure by PPI to perform its work in

accordance with its contract.  Royal Petition at 3; Blue Moon Petition at ¶ 20.  Thus, Exclusion

2.m precludes coverage as a matter of law even if this Court finds "property damage" caused by

an "occurrence" not precluded by Exclusions 2.j(5) or 2.l.

### 3.    In the alternative, the Contractual Liability Exclusion Precludes Coverage as a matter of law.

The Policy also precludes coverage for PPI's contractual liability in the underlying suits.

Exclusion 2.b, the "Contractual Liability" exclusion, precludes coverage for:

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> > (1)    That the insured would have in the absence of the contract or agreement; or
> >
> > (2)    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. . . .

Exhibit A-1 at 2.

Both the Blue Moon Petition and the Royal Petition allege that PPI's drilling of the well

in the wrong location constituted a breach of PPI's contractual obligations under the Master

Service Agreement and other agreements. Blue Moon Petition at ¶¶ 6, 11-12, 14, 17 (outlining

the various letter agreements and other agreements under which PPI was contractually obligated to drill the well); Royal Petition at ¶ 7 ("PPI failed to comply with the applicable State laws, rules, regulations, orders, and/or ordinances in violation of the MSA."). Indeed, Royal specifically alleges that PPI "assumed liability in a contract or agreement (MSA) to reimburse Royal for such property damage." Royal Petition at 3.

These allegations explicitly place the Royal Suit within Exclusion 2.b. That exclusion's language "applies without qualification to liability assumed by contract" with two exception not applicable here. *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 128 (Tex. 2010) (the contract liability exclusion "excludes claims when the insured assumes liability for damages in a contract or agreement, except when the contract is an insured contract or when the insured would be liable absent the contract or agreement.") *Id.* Thus, as a matter of law, any "property damage" caused by PPI is property damage for which PPI "is obligated to pay damages by reason of the assumption of liability in a contract or agreement" within the meaning of the contractual liability exclusion.

In an attempt to create coverage where the facts preclude it, Royal alleges "PPI would have had such liability to Royal for such property damage even in the absence of the contract or agreement." Royal Petition at 3-4. Although obviously intended to avoid application of the contractual liability exclusion by tracking the language of the exclusion's exception, this allegation is demonstrably inconsistent with the facts alleged in the Royal Petition, which state that PPI had a contractual obligation to drill the well in the right place. The only basis for PPI's liability for drilling the well in the wrong lease is the contract with Royal. PPI would not undertake to drill an oil well on any particular mineral lease in the absence of a contractual obligation to do so. Under Texas law, the exception for liability "in the absence of a contract or

agreement" means obligations imposed by tort law rather than a contractual obligation. *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 134 (Tex. 2010) ("As modified by the second exception, the exclusion precludes the insurer's liability for indemnity if the insured is obligated to pay only because of its contractually assumed liability."); *Century Sur. Co. v. Hardscape Const. Specialties Inc.*, 578 F.3d 262, 266 (5th Cir. 2009); Policy, Exhibit A-1 at 13 ("insured contract" exception provides "[t]ort liability means a liability that would be imposed by law in the absence of any contract or agreement").  If the insured "assumed liability under the contract that it would not have had under the law," the exception does not apply and the contractual liability exclusion precludes coverage. *Underwriters at Lloyd's of London v. Gilbert Texas Const., L.P.*, 245 S.W.3d 29, 35 (Tex. App.--Dallas 2007), *aff'd sub nom. Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010).  There is simply no general tort duty to drill an oil well on the proper lease.  Thus PPI, as a matter of law, "assumed liability under the [MSA] that it would not have had under the law."

Construing *Gilbert*, this Court recently rejected a similar attempt rely on the exception to the contractual liability exclusion and held that "the contractual liability exclusion applies when an insured has entered into a contract and, by doing so, has assumed liability for its own performance under that contract." *Ewing Const. Co., Inc. v. Amerisure Ins. Co.*, 2011 WL 1627047, slip op. at *6 (S.D. Tex. April 28, 2011).   The Court noted that the allegations of negligence in performance of the contract were irrelevant because the negligence was "based upon the same conduct that forms the breach of contract claim" and "[t]he damage alleged is damage to the subject matter of the contract, nothing else."  *Id.* at *11.  Because the claims clearly fell within the contractual liability exclusion, the Court further held that the carrier had no duty to defend or indemnify.  *Id.* at *12.

The Royal and Blue Moon Petitions specifically allege that PPI's duty to drill the well on a particular lease arose from its contractual obligations to Royal. Thus, the contractual liability exclusion applies to preclude coverage as a matter of law, even if this Court finds property damage was alleged and the business risk exclusions do not apply.

**4.      Liberty has no Duty to Defend or Indemnify PPI under the Underground Resources Coverage.**

The Royal Petition, in another obvious ploy to plead into coverage, alleges the property damaged includes "damage to underground resources (property) owned by Royal."  Petition at 4. The Blue Moon Petition contains no such allegation.

This allegation by Royal refers to the "Underground Resources and Equipment Coverage" ("UREC") endorsement, No.  CG 22 62 10 01, of the PPI Policy, excerpted at Exhibit A-2 hereto, which adds the following language to Section III-Limits of Insurance:

> 8.      Subject to 5. above, the Underground Resources and Equipment Hazard Property Damage Aggregate Limit shown in the Schedule or in the Declarations as subject to this endorsement is the most we will pay under Coverage A for the sum of damages because of all "property damage" included within the "underground resources and equipment hazard" and arising out of operations in connection with any one well.

UREC Endorsement, Exhibit A-2 at 1.  The stated limit is $1 million.  *Id.*

In the first place, this endorsement does not provide coverage because it is only triggered if there is "property damage."  As discussed above, neither of the underlying suits allege facts within the definition of that term.

Moreover, even if there is "property damage" here, the factual allegations of the underlying suits do not satisfy the definition of "underground resources and equipment hazard." The UREC defines that term as follows:

> 2.      "Underground resources and equipment hazard" includes "property damage" to any of the following:

    a.    Oil, gas, water or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water;

    b.    Any well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on;

    c.    Any casing, pipe, bit, tool, pump or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or hole or beneath the surface of any body of water.

UREC Endorsement, Exhibit A-2, at 2.

The Royal and Blue Moon Suits do not allege any facts within the "underground resources and equipment hazard" coverage.  In *Camaley*, discussed *supra*, the court had found there was "property damage" due to the allegation of constructive eviction based on deviation from the planned well bore onto another leasehold.  364 F. Supp. 2d at 602.  The *Camaley* court nevertheless held that underground resources coverage, identical to that in the PPI Policy, was not triggered.  364 F. Supp. 2d at 609.  The insured in *Camaley* argued the suit fell under this endorsement because it "implicitly alleges that the well bore made unauthorized physical contact with the minerals on the neighboring property, by accident."  *Id.* at 608. The court held that potential damage to neighboring property was irrelevant because the underlying petition alleged damage to the leasehold on which the well was started, not the neighboring property.  Because the petition against the insured did not allege damage to "minerals or strata" the court held the underground resources coverage was not triggered.  *Id*. at 609.

Similarly in this case, the Royal and Blue Moon Petitions do not allege damage to any oil or gas resources or to any well, hole, formation, or strata. There are no factual allegations that inform or support Royal's conclusory allegation of damage to "underground resources."  There are no factual allegations that could conceivably support a claim of damage to the physical strata or resources contained in them.  To the contrary, both Petitions allege facts showing that the only

damage was in the form of expenses to drill the mis-located well and expenses to preserve the leases.  In addition, the Blue Moon Petition specifically alleges the well drilled by PPI was plugged and abandoned and there is no allegation by either Royal or Blue Moon that the formation or strata was damaged by the well PPI drilled.  Blue Moon Petition at ¶ 18.  The underground resources coverage endorsement is very specific about the types of property damage it covers and the vague allegations of the Royal Petition do not suffice to trigger that coverage.

**B.     Liberty Has No Duty to Defend PPI in the Underlying Suits Under Coverage B for Personal and Advertising Injury.**

Coverage B "applies to 'personal and advertising injury' caused by an offense arising out of your business."  Policy, Exhibit A-1 at 5.  The term "personal and advertising injury" is defined in the Policy to include, in relevant part, "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor."   Exhibit A-1 at 14.  There is no coverage for the underlying suits under Coverage B because this portion of the "personal and advertising injury" definition applies only to landlord-tenant situations and the like. *Decorative Center of Houston v. Employers Cas. Co.,* 833 S.W.2d 257, 261 (Tex. App.--Corpus Christi 1992, writ denied); *Patel v. Northfield Ins. Co.,* 940 F. Supp. 995, 1001 (N.D. Tex.1996).

In any event, there is no allegation in this case of eviction from any leasehold.   Further, in the *Camaley* decision, where there was a specific allegation of constructive eviction from a mineral leasehold, the court held that the plain language of the policy and the holdings of *Decorative Center* and *Patel* precluded Coverage B applicability because the allegation of "constructive eviction" was not equivalent to an allegation of "wrongful eviction, wrongful entry, or invasion of private occupancy" under Coverage B.   364 F. Supp. 2d at 608; *see also*

Defendant's Motion for Summary Judgment                                                    Page 24

*Robert Trotter Gift Fund for Thomas v. Trinity Universal Ins. Co.*, 2007 WL 2682247 (Tex. App.--Austin Sept. 13, 2007, pet. denied) (concluding that eviction from a real property easement  was not within Coverage B because "the claimed nonpossessory interests made the basis of the underlying suit are so clearly distinguishable from the general type or nature of property interests implicated by wrongful eviction or wrongful entry that their alleged infringement could not potentially be a covered "invasion of right of private occupancy.").   As a matter of law, the allegations of the Blue Moon and Royal Suits do not fall within Coverage B of the Policy.

## VII.
## CONCLUSION AND PRAYER

For the reasons set forth above, Liberty asks the Court to grant this Motion and enter judgment that Plaintiff take nothing by this action and for such further relief to which Liberty is entitled.

Respectfully submitted,

HANNA & PLAUT, L.L.P.
211 E. Seventh Street, Suite 600
Austin, Texas 78701
Telephone:     (512) 472-7700
Facsimile:     (512) 472-0205

BY:    /s/ Catherine L. Hanna
Catherine L. Hanna
State Bar No. 08918280
Southern District ID: 13577
Attorney-in-Charge
Kevin J. Franta
State Bar No. 00789539
Southern District ID:  28312
**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 2, 2011, a true and correct copy of this document was filed via the Court's ECF system pursuant to LR5.1.  The notice of electronic filing generated by the ECT system constitutes service of the document on counsel who are registered users of the system.  Any other counsel of record will be served pursuant to FRCP 5(b) on this same date.

Darrell L. Barger
Albert J. Hall
Hartline, Dacus, Barger, Dreyer & Kern, L.L.P.
800 N. Shoreline Boulevard, Suite 2000 N. Tower
Corpus Christi, Texas 78401

James L. Cornell
Cornell & Pardue
2727 Allen Parkway, Suite 1675
Houston, Texas 77019

ATTORNEYS FOR PLAINTIFF

<u>/s/ Catherine L. Hanna</u>
Catherine L. Hanna