UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PPI Technology Services, LP | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-11-47 |
| | § | |
| Liberty Mutual Insurance Company | § | |
| | § | |
| Defendant. | § | |
| | § | |

**ORDER**

Pending before the Court are Plaintiff PPI Technology Services, L.P.'s, Motion for Partial Summary Judgment, (D.E. 14), and the Motion for Summary Judgment of Defendant Liberty Mutual Insurance Company. (D.E. 16.) For the reasons stated herein PPI's Motion for Partial Summary Judgment is DENIED, (D.E. 14), and Defendant Liberty Mutual Insurance Company's Motion for Summary Judgment is GRANTED. (D.E. 16.)

**I.   JURISDICTION**

The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000. PPI timely removed the case on February 24, 2011, less than thirty days after suit was filed on January 28, 2011. (D.E. 8 at 3.)

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Liberty Mutual Insurance Company ("Liberty") issued a commercial general liability policy (Policy Number TB1-691-550640-016, hereafter referred to as "the Policy") to Plaintiff PPI Technology Services, L.P. ("PPI"), with a policy period running from April 1, 2006,

to April 1, 2007. (D.E. 1 at 10.) The Policy provided, inter alia, that Liberty would defend and indemnify PPI for claims arising out of PPI's exploration and production business operations, and included broad form property damage coverage and specialized underground resources and equipment coverage. (D.E. 1, Ex. A at 2.)

In June 2005, Royal Production Company, Inc. ("Royal"), a lessor and operator of three mineral leases in Terrebonne Parish, Louisiana, retained PPI (among others) to assist in well planning and to oversee the drilling of various wells on these leases. (D.E. 1 at 18.) Royal and non-operator working interest owners including Blue Moon Exploration Company, L.L.C. (collectively "Blue Moon Plaintiffs"), subsequently sued PPI in state court for allegedly drilling the well in the wrong location resulting in a "dry hole."[1] (Id. at 11.)

The pleadings in these state actions (hereinafter "the Underlying Lawsuits")[2] assert as follows. On February 15, 2006, Blue Moon Plaintiffs entered into a letter agreement with Royal concerning oil and gas exploration in Lake Boudreaux, Terrebonne Parish, Louisiana. (D.E. 22-2 at 5.) In addition, the parties to the letter agreement entered into an operating agreement at that time. (Id.) Pursuant to these agreements, the proposed oil and gas operations were to be conducted on three mineral leases (numbered 18891; 18892; and 18893) that had been entered into with the State of Louisiana. (Id.)

Some time after April 19, 2006, Royal contracted with PPI for PPI to drill a well on Lease 18891. (Id. at 7.) PPI began drilling on June 9, 2006, and continued its operations until

---

[1] Royal, as lessor and well operator, sued PPI in Cause No. 09-4086-H, Royal Production Company, Inc. v. PPI Technology Services, L.P., in the 347th District Court of Nueces County, alleging that PPI negligently caused the drilling rig to be towed to the wrong lease location, resulting in the drilling of a dry hole and property damage. (D.E. 1 at 11.) The non-operator working interest owners in the lease also sued PPI in Cause No. 158193, Blue Moon Exploration Company, L.L.C., et al. v. PPI Technology Services, L.P., in the 32nd District Court of Terrebonne Parish, Louisiana bringing similar negligence claims against PPI. (Id.) The claims asserted in the Underlying Lawsuits have been referred to arbitration in Cause No. 70 198 Y00701 09, Blue Moon Exploration Company, L.L.C., et al. v. Royal Production Company, Inc., et al, before a tribunal operating under the Rules and Procedures promulgated by the American Arbitration Association. (D.E. 14 at 2.)

July 14, 2006.  (Id.)  The well PPI drilled was a dry hole, which was subsequently plugged and abandoned on July 12, 2006.  (Id.)  Blue Moon Exploration Company, L.L.C., received notice on October 29, 2008, that PPI had mistakenly drilled the well on Lease 18892, rather than on Lease 18891, as it had been instructed.  (See id.)  As noted, Royal and the Blue Moon Plaintiffs sued PPI.

After it had been sued, PPI timely tendered the lawsuits to Liberty for defense and indemnity.  (D.E. 1 at 11.)  Liberty has denied that it owes PPI any duty to defend or to indemnify PPI in the Underlying Lawsuits.  (Id.)  In a complaint filed in state court on January 28, 2011, and timely removed to this Court on February 24, 2011, PPI brings the following claims against Liberty: (1) breach of insurance contract, (2) breach of section 541.060 of the Insurance Code, and (3) breach of the duty of good faith and fair dealing.  (D.E. 1, Ex. B.)

On July 26, 2011, PPI filed a Motion for Partial Summary Judgment on its claim for breach of contract, seeking a judicial declaration that Liberty has a duty to defend PPI in the Underlying Lawsuits.  (D.E. 14.)  On August 2, 2011, Liberty filed a motion for summary judgment, contending it has no duty to defend PPI because the suits do not contain allegations qualifying for coverage under the Policy and that, in any case, certain policy exclusions apply.  (D.E. 16.)  Defendant Liberty argues that it is entitled to summary judgment on all claims of coverage in this action.  (Id. at 2.)

## III.   DISCUSSION

### A.   Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The substantive law identifies which

facts are material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law."  Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case."  Rivera, 349 F.3d at 247.  The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").  It is well established that "[t]he moving party need not produce evidence negating the existence of a material fact, but need only point out the absence of evidence supporting the nonmoving party's case."  Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1992).

Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party.  Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).  Summary-judgment evidence is subject to the same rules that govern admissibility of evidence at trial.

Resolution Trust Corp. v. Starkey, 41 F.3d 1018, 1024 (5th Cir. 1995).  In considering a motion for summary judgment, the court cannot make credibility determinations, weigh the evidence, or draw inferences for the movant.  Anderson, 477 U.S. at 255.  The court must draw all justifiable inferences from the summary-judgment evidence in the light most favorable to the nonmovant.  Id.

**B.     Declaratory Judgment Act**

Title 28 U.S.C. § 2201(a), the Declaratory Judgment Act, provides, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

The Declaratory Judgment Act does not confer federal jurisdiction; rather, the parties must provide an independent basis for jurisdiction.  Comstock Oil & Gas Inc. v. Ala. & Coushatta Indian Tribes of Tex., 261 F.3d 567, 573 n. 5 (5th Cir. 2001).  The Act "has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995).  Further, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  Id. at 288.

Here, Plaintiff seeks declaratory judgment concerning its rights under the Policy.  (D.E. 14 at 1.)

### C. Relevant Policy Provisions

#### 1. Coverage A "Bodily Injury and Property Damage Liability"

##### a. Insuring Clause

Under the terms of the Policy, Defendant Liberty "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (D.E. 16-1 at 75.) Further, "[Liberty] will have the right and duty to defend the insured against any 'suit' seeking those damages. However, [Liberty] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (Id.) Moreover, "[t]his insurance applies to 'bodily injury' or 'property damage' only if: (1) [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; [and] (2) [t]he 'bodily injury' or 'property damage' occurs during the policy period . . . ." (Id.)

##### b. "Property Damage"

The Policy defines "property damage" as:

a. Physical injury to tangible property, including resulting loss of use of that property. All such property loss shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(D.E. 16-1 at 88-89.)

##### c. "Occurrence"

The Policy defines the term "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (D.E. 16-1 at 88.)

### d. "Underground Resources and Equipment Coverage"

The Policy also covers "'property damage' included within the 'underground resources and equipment hazard' arising out of operations performed by you or on your behalf and described in this endorsement." (Id. at 48.)  Further:

> "Underground resources and equipment hazard" includes "property damage" to any of the following:
>
> a.  Oil, gas, water or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water;
>
> b.  Any well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on; [and]
>
> c.  Any casing, pipe, bit, tool, pump or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or hole or beneath the surface of any body of water.

(D.E. 16-1 at 48) (emphasis added).

### 2. Coverage B "Personal and Advertising Injury"

The Policy further states:  "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies."  (D.E. 16-1 at 79.)  "Personal and advertising injury" means, inter alia, "injury . . . arising out of . . . [t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy to a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." (Id. at 88.)

### D. Breach of Contract

PPI argues that Defendant Liberty Mutual has breached its insurance contract with PPI because Defendant has an obligation to defend PPI in the Underlying Lawsuits and has not done so.  (D.E. 14 at 6.)  Defendant Liberty contends that the petitions in the Underlying Lawsuits "do

not allege 'bodily injury' or 'property damage' caused by an 'occurrence' as Required by Coverage A" of the Policy. (D.E. 16 at 2.) Defendant further contends that the suits do not allege "property damage" within the meaning of the term "underground resources and equipment hazard." (Id.) Moreover, the suits do not allege "personal and advertising injury" under coverage B of the Policy. (Id.)

Defendant asserts, in the alternative, that even were the Court to find that the Petitions in the Underlying Lawsuits sufficiently alleged an "occurrence" causing "property damage", Defendant would still have no duty to defend given that several of the Policy's exclusions preclude coverage in the instant case. (Id.) Finally, Defendant contends that because it has no duty to defend, the Court can and should find that Defendant has no duty to indemnify PPI in this case. (D.E. 24 at 13.)

The questions presented in this case require the Court to interpret the Policy's terms. Under Texas law, insurance policies are contracts. Barnett v. Aetna Life Ins. Co., 723 S.W.2d 663, 665 (Tex. 1987). Moreover, the language of insurance policies is construed "using ordinary rules of contract interpretation." Tanner v. Nationwide Mut. Fire. Ins. Co., 289 S.W.3d 828, 831 (Tex. 2009). Further, "[p]olicy terms are given their ordinary and commonly understood meaning unless the policy itself shows the parties intended a different, technical meaning." Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co., 267 S.W.3d 20, 23 (Tex. 2008) (citation omitted). When there is no ambiguity in the terms of an insurance policy, "it is the court's duty to give the words used their plain meaning." Puckett v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex. 1984); see also Ramsay v. Md. Amer. Gen. Ins. Co., 533 S.W.2d 344, 346 (Tex. 1976) ("With no definition in the policy, we must first determine whether the term has a readily ascertainable meaning in the plain, ordinary and popular sense of the words themselves.").

As to claims for breach of contract under Texas law, one court noted:

> A breach of contract claim requires the plaintiff to prove that (1) a valid contract existed, (2) the plaintiff performed, (3) the defendant breached, and (4) the plaintiff has suffered damages as a result. A party breaches a contract by failing to perform when that party's performance is due. When performance of a duty under a contract is due any non-performance is a breach. A breach of contract claim accrues immediately at the time that the contract is breached. Whether a party's conduct constitutes a breach is a question of law for the court to determine.

E.P. Towne Center Partners L.P. v. Chopsticks, Inc., 242 S.W.3d 117, 123 (Tex. App.—El Paso, 2007) (internal citations and quotations omitted).

### 1. Duty to Defend

Concerning an insurer's general obligations under an insurance policy, the Texas Supreme Court has stated:

> [i]n liability insurance policies generally, an insurer assumes both the duty to indemnify the insured, that is, to pay all covered claims and judgments against an insured, and the duty to defend any lawsuit brought against the insured that alleges and seeks damages for an event potentially covered by the policy, even if groundless, false or fraudulent, subject to the terms of the policy. However, the duty to defend and the duty to indemnify are distinct and separate duties.

D.R. Horton-Texas, Ltd. v. Market Int'l Ins. Co. Ltd., 300 S.W.3d 740, 743 (Tex. 2009); Zurich Am. Ins. Co. v. Nokia, Inc., 268 S.W.3d 487, 490 (Tex. 2008).[3] In determining whether an insurer is under a duty to defend its insured, Texas follows the "eight-corners" rule. See GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d 305, 308 (Tex. 2006). The

---

[3] The Policy in this case makes provision for both indemnification and defense. It reads:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply.

(D.E. 16-1 at 75.)

application of the eight-corners rule involves a two-step process.  See VRV Development L.P. v. Mid-Continent Casualty Co., 630 F.3d 451, 457 (5th Cir. 2011).  First, a court must "identify the relevant allegations in the four corners of the underlying pleadings."  Id.  Second, a court must "determine whether these allegations support a claim for coverage . . . ." under the provisions of the relevant policy.  Id.  "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured."  Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997).  All doubts are resolved in favor of the insured.  Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 528 (5th Cir. 2004).

> a. **Factual Allegations**

When applying the eight-corners rule, courts must focus upon the factual allegations contained in the underlying pleadings.  VRV Development L.P., 630 F.3d at 457.  Specifically, "[i]n reviewing the underlying **factual** pleadings, the court must focus on the **factual allegations that show the origin of the damages, rather than on the legal theories advanced**."  Merchs. Fast Motor Lines, Inc., 939 S.W.2d at 141 (emphasis added).  The Court may not "read **facts** into the pleadings" or "imagine **factual** scenarios which might trigger coverage."  Gore Design Completions, Ltd. v. Hartford Fire Ins. Co., 538 F.3d 365, 369 (5th Cir. 2008) (emphasis added); Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co., 279 S.W.3d 650, 655 (Tex. 2009) (emphasis added).  Finally, "[i]f a petition does not **allege facts** within the scope of coverage, an insurer is not legally required to defend a suit against its insured."  Merchs. Fast, 939 S.W.2d at 141 ("It is not the cause of action alleged that determines coverage **but the facts giving rise to the alleged actionable conduct.**") (citation omitted) (emphasis added).

As an initial matter, the Court concludes that several assertions in the operative pleadings constitute legal, rather than factual, allegations. In its petition, Royal states that it has suffered "property damage" as a result of PPI's conduct, and then defines "property damage" in a way that precisely mirrors the terms of the Policy. (D.E. 1 at 20.) Similarly, the Blue Moon Plaintiffs assert that PPI's actions in drilling a well in an incorrect location "constituted negligence and/or gross negligence, a breach of PPI's legal duty to the Plaintiffs . . . ." (D.E. 22-2 at 8.)

These assertions are legal in nature because they concern the definition and categorization of certain conduct and objects, rather than the "facts giving rise to the alleged actionable conduct." Merchs. Fast, 939 S.W.2d at 141. As mere legal assertions, these statements do not qualify as "allegations" for purpose of the eight-corners rule. See id. Thus, the Court will not consider them in evaluating Defendant Liberty's duty to defend.

The relevant factual allegations in the Underlying Lawsuits are as follows. Royal asserts that PPI "caused the drilling rig to be towed to - and placed upon - the wrong location." (D.E. 1 at 19.) This in turn resulted in "the well being drilled in the wrong location . . . ." resulting in a "dry hole." (Id.) This dry hole was later plugged and abandoned. (D.E. 22-2 at 7.) PPI's locating and drilling the well in the wrong location necessitated "the payment of two delay rentals totaling $737,752.40 in order to maintain" three mineral leases in the absence of actual production. (See id. at 8.) In addition, Royal and the Blue Moon Plaintiffs allege that they expended in excess of $4,200,000 for the drilling of the well in the wrong location. (D.E. 1 at 19.) Royal further contends that it suffered property damage throughout the property where the well was being drilled. (Id.)

With these factual allegations in place, the Court turns to the language of the Policy.

### b. Policy Language

As noted, the second step in the eight-corners analysis involves consideration of whether the factual allegations in the relevant pleadings support a claim for coverage under the language of a particular policy. VRV Development L.P., 630 F.3d at 457. In the instant case, PPI contends that the Underlying Lawsuits involve claims for "property damage" and "damage to underground resources".

By its terms, the Policy "applies to . . . 'property damage' only if . . . (1) The . . . 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; [and] (2) The . . . 'property damage' occurs during the policy period . . . ." (D.E. 16-1 at 75.) Thus, in the context of this lawsuit, PPI can establish coverage where it demonstrates that the Underlying Lawsuits allege: (1) property damage; (2) caused by an occurrence; (3) that takes place in the coverage area during the policy period (and provided no exclusion applies).[4]

### (i) "Occurrence"

In the Policy, the term "occurrence" is defined to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id. at 88.) However, the term "accident" is not defined in the Policy, and thus the term should be given its generally accepted or commonly understood meaning. Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 8 (Tex. 2007) (concluding that, though the term "occurrence" had been defined in the insurance policy, the term "accident" had not, and applying the commonly understood meaning of the term "accident"). "An accident is generally understood to be a fortuitous, unexpected, and unintended event." Id. Further, "a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result

---

[4] The parties doe not dispute that PPI's drilling operations took place in the 'coverage territory' 'during the policy period'.

would have been different had the deliberate act been performed correctly." Id. (citations omitted).

In this case, PPI is alleged: (1) to have taken drilling equipment to the wrong coordinates; and (2) to have drilled there. The Court concludes that the misplacement of the drilling equipment is an accident as that term is ordinarily understood. The underlying pleadings suggest that the outcome, the drilling of a dry hole, would have been different had PPI located the well properly. This accident constitutes an "occurrence" within the meaning of the Policy.

The drilling activity itself is another matter. Nothing in the Underlying Lawsuits indicates that there was anything unanticipated in the effectuation of PPI's drilling activity. PPI intended to, and did, conduct an operation that resulted in the earth being penetrated in exploration for oil. The drilling involved deliberate action with expected consequences and was therefore not accidental. Thus, the drilling activity cannot constitute an "occurrence" within the meaning of the Policy.

### (ii) "Property Damage"

As noted, the term "property damage" is defined to mean "(a) physical injury to tangible property including loss of use of that property . . . ; or (b) loss of use of tangible property that is not physically injured." (D.E. 16-1 at 88-89.) The terms "physical injury" "loss of use" and "tangible property" are not defined in the Policy. Thus, the Court is to give these terms their ordinary and commonly understood meaning. OneBeacon Ins. Co., 267 S.W.3d at 23. The term "physical" means "having material existence: perceptible especially through the senses and subject to the laws of nature." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed.2010). The term "injury" means "hurt, damage, or loss sustained." Id. Thus, the term "physical injury" entails material damage sustained. The term "loss" is defined to mean "the

harm or privation resulting from loss or separation" Id. "Use" means "the privilege or benefit of using something." Id. The "loss of use", in this context, means being deprived of the use of something.

The term "tangible property", as used in the Policy, has been construed under Texas law. See Lay v. Aetna Ins. Co., 599 S.W.2d 684, 686 (Tex. Civ. App.—Austin, 1980) (holding that claim for damages from a misplaced well did not qualify as "property damage" under the appellant's comprehensive general liability policy). The court in Lay stated "'[t]angible property' is commonly understood to be property that is capable of being handled or touched. It has also been defined as '. . . such property as may be seen, measured and estimated by the physical senses.'" Id. (the court held that the claim to recover costs associated with purchasing an assignment of drilling rights did not involve any tangible property because "[t]he purchase of the assignment was an economic transaction involving the exchange of money for the privilege of drilling and producing oil").

In light of these definitions, the Court concludes that the allegations that Royal and the Blue Moon Plaintiffs expended $4,200,000 in funds to drill the misplaced well, and that the well's misplacement necessitated the payment of $737,752.40 in delay rentals by Blue Moon Plaintiffs, are not claims for "property damage" within the meaning of the Policy. No tangible property is involved in the payment of delay rentals. Like the purchase of the assignment at issue in Lay, the payment of delay rentals in this case constitute "economic transaction[s] involving the exchange of money for the privilege of drilling and producing oil." Id.

Further, though some of the $4,200,000 expended in drilling the dry hole would almost certainly have been exchanged for drilling equipment, which is tangible property, the allegations in the underlying petitions do not suggest that Royal or Blue Moon experienced physical injury

to the drilling equipment for which they had paid. Neither do the petitions contain factual allegations that Royal or the Blue Moon Plaintiffs lost the use of such equipment. Thus, in this case, the allegations concerning the loss of drilling costs do not give rise to coverage for "property damage" under the terms of the Policy.

As noted, Royal's petition stated a claim for property damage throughout the lease where the well was drilled. (D.E. 1 at 19.) Presumably, in making this claim, Royal is asserting that the land itself was damaged. The penetration of the earth where the well was drilled constitutes physical damage to tangible property. However, as noted, the only "occurrence" alleged in the underlying pleadings is the misplacement of the well. The drilling itself was not an accident and therefore cannot constitute an "occurrence", per analysis supra. Because damage to the land itself was not caused by an "occurrence", any claim for damage to the land is foreclosed under the general definition of "property damage".

### (iii)   Damage to Underground Resources

The Court concludes that coverage for damage to underground resources is precluded for the same reason. Again, the term "underground resources" is defined to include "[a]ny well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on . . . ." (D.E. 16-1 at 48.) The term "strata" is not defined in the Policy, and thus the Court construes this term according to its plain meaning. "Strata" means "a sheetlike mass of sedimentary rock or earth of one kind lying between beds of other kinds." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed.2010). The pleadings in the Underlying Lawsuit, liberally construed, suggest that PPI engaged in activity causing "physical injury to tangible property" when it drilled though "strata" in its exploration for oil. However, because

the drilling activity itself does not constitute an "occurrence" within the meaning of the Policy, claims for damages to underground resources cannot give rise to coverage under the Policy.

In sum, the Court concludes that the pleadings in the Underlying Lawsuit do not allege any claims for an "occurrence" causing "property damage", including damage to "underground resources", within the meaning of the Policy. Given that this is so, the Court holds that Defendant Liberty Mutual has no duty to defend PPI in the Underlying Lawsuits.[5] Accordingly, PPI's Motion for Partial Summary Judgment is DENIED. (D.E. 14.)

### 2. Duty to Indemnify

In its Reply to Plaintiff's Response to Liberty's Motion for Summary Judgment, Defendant contends that, should the Court find that it has no duty to defend PPI, the Court should also find that Liberty has no duty to indemnify PPI. (D.E. 24 at 13.) The Court disagrees. "Generally, Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless 'the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'" Northfield Ins. Co., 363 F.3d at 523 (citing Farmers Texas County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 84 (Tex. 1997)); see also Century Sur. Co. v. Hardscape Const. Specialties Inc., 578 F.3d 262, 270 (5th Cir. 2009) (citing Griffin). The Texas Supreme Court later clarified its holding in Griffin by stating:

> [the holding in Griffin] was not based on a rationale that if a duty to defend does not arise from the pleadings, no duty to indemnify could arise from proof of the

---

[5] In addition, the Court holds that the allegations in the Underlying Lawsuits do not state a claim for coverage under the terms of Coverage B. Coverage B "applies to 'personal and advertising injury' caused by an offense arising out of your business." (D.E. 16-2 at 6.) The term "personal and advertising injury" is defined to include "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that another person occupies." (Id.) The facts alleged in the pleadings of the Underlying Suits do not indicate that Royal or the Blue Moon Plaintiffs seek damages for any wrongful eviction from, or wrongful entry into, their mineral leases. The Court thus concludes that the allegations in the Underlying Lawsuit do not trigger Liberty's duty to defend on the basis of Coverage B.

> allegations in the petition. These duties are independent, and the existence of one does not necessarily depend on the existence or proof of the other.
>
> In Griffin, in fact, we recognized that it may be necessary to defer resolution of indemnity issues until after the underlying third-party litigation is resolved because coverage may turn on facts actually proven in the underlying lawsuit. . . . see also GuideOne, 197 S.W.3d at 310 (explaining that "the facts actually established in the underlying suit control the duty to indemnify"); Utica, 141 S.W.3d at 204–05 (affirming an insurer's duty to defend, but reversing and remanding on the duty to indemnify issue because whether indemnification under the policy was triggered required a "factual resolution"); Cowan, 945 S.W.2d at 821 (explaining that the "the duty to indemnify is triggered by the actual facts establishing liability in the underlying suit").

Market Int'l Ins. Co. Ltd., 300 S.W.3d at 743.

As noted, the recovery of any damages to the land itself is foreclosed as a matter of law because such damages, if any, were not the product of an "occurrence". Further, recovery of damages for the expenditure of delay rentals is foreclosed as matter of law, because the payment of money for an intangible right in a mineral lease will never involve "tangible property". However, facts could come to light that demonstrate, for example, that some of the $4,200,000 in drilling costs included expenditures for tangible property, whose use was lost due to the misplacement of the well. The possibility that Defendant Liberty has a duty to indemnify PPI has not been entirely foreclosed in this case because facts triggering coverage could be established in the Underlying Lawsuits. Pursuant, then, to the general rule that courts "only consider[] the duty-to-indemnify question justiciable after the underlying suit is concluded . . . ." the Court declines to resolve the matter of indemnity at this time. See Northfield Ins. Co., 363 F.3d at 523.

The foregoing analysis makes clear that PPI cannot sustain a breach-of-contract action against Defendant Liberty at the present time, because where there is no duty to perform, there can be no breach. No duty to defend ever arose in the Underlying Lawsuits. Further, no duty to

indemnify has yet arisen. Great Am. Lloyds, Ins. Co. v. Middlestadt, 109 S.W.3d 784, 786 (Tex. App.—Fort Worth, 2003) ("No duty to indemnify arises *unless the underlying litigation establishes liability for damages* covered by the insuring agreement of the policy.") (citing Employers Cas. Co. v. Block, 744 S.W.2d 940, 944 (Tex. 1988), *disapproved on other grounds by* State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696, 714 (Tex. 1996)). Because Liberty's performance under the Policy is not yet due, there has been no breach of contract as a matter of law, and Defendant Liberty's Motion for Summary Judgment as to this issue is GRANTED. Plaintiff's claim for breach of contract is therefore DISMISSED.

### E. Prompt Payment of Claims Act

Because the Court has ruled that Liberty has no duty to defend PPI in the Underlying Lawsuits and that no duty to indemnify has yet arisen, the Court concludes that Defendant Liberty has not violated the Prompt Payment of Claims Act. See Tex. Ins. Code. § 542.060.[6] As the Texas Supreme Court has explained, "[t]here can be no liability under [the statute] if the insurance claim is not covered by the policy." Progressive County Mut. Ins. Co. v. Boyd, 177 S.W.3d 919, 922 (Tex. 2005). To prevail under the statute, "the plaintiff must first establish that there is a claim under the insurance policy for which the insurer is liable. However, if the Policy does not provide coverage for the claims asserted in the underlying lawsuit, the insurer is not liable and the plaintiff may not recover." Mary Kay Holding Corp. v. Fed. Holding Co., 2007 WL 4179313, at *9 (N.D. Tex. Aug. 14, 2007) (citing Boyd; Allstate Ins. Co. v. Bonner, 51 S.W.3d 289, 291 (Tex. 2001)).

---

[6] This section provides: "If an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees." Tex. Ins. Code § 542.060. This statute was formally codified under 21.55 of the Texas Insurance Code.

Here, PPI has not established that there is a claim under the Policy for which Defendant Liberty is liable. Again, Liberty was never under a duty to defend. Similarly, Liberty has, as of yet, no duty to indemnify because a determination of PPI's liability has not yet been established. Accordingly, the Court concludes that Defendant Liberty Mutual has not breached its insurance contract with PPI, and thus Liberty's Motion for Summary Judgment as to this issue is GRANTED. Consequently, Plaintiff's claim made pursuant to the Texas Insurance Code is DISMISSED.

### F. Breach of Duty of Good Faith and Fair Dealing

Finally, the Court concludes that PPI cannot sustain its action for breach of the duty of good faith and fair dealing. The Texas Supreme Court has held:

> there can be no cause of action for an insurer's bad faith refusal to pay a claim until the insured first establishes that the insurer breached its duty under the contract of insurance. [Further,] [t]he determination of whether an insurer acted in bad faith generally requires as a predicate a determination that coverage exists for the loss in question.

Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 341 (Tex. 1995) (internal citations, parentheticals, and quotations omitted). PPI cannot establish that Defendant Liberty breached a duty to defend PPI in the Underlying Lawsuits, and cannot yet establish that Liberty has breached a duty to indemnify. Consequently, it fails to establish the necessary predicate for a claim of bad faith. Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to this issue. Plaintiff's claim for breach of the duty of good faith and fair dealing is therefore DISMISSED.

### IV. CONCLUSION

As the foregoing analysis suggests, Plaintiff's Motion for Partial Summary Judgment should be and is hereby DENIED. (D.E. 14.) Further, the Motion for Summary Judgment of Defendant Liberty Mutual Insurance Company (D.E. 16), is GRANTED. Given that this Order

is dispositive as to all Plaintiff's claims, the Court concludes that PPI's case against Defendant is hereby DISMISSED in its entirety.

    SIGNED and ORDERED this 17th day of January, 2012.

_____
Janis Graham Jack
Senior United States District Judge